JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant Maurice Freeman ("defendant") appeals from his convictions for two counts of murder with firearm specifications, and having a weapon while under disability. Defendant assigns four errors challenging various rulings the court made during the jury trial. For the reasons that follow, we affirm.
 {¶ 2} In August 2001, defendant was indicted on two counts of aggravated murder with mass murder and firearm specifications, two counts of attempted murder with firearm specifications, and one count of having a weapon while under disability. However, at defendant's trial in April 2002, the State did not pursue the two counts of attempted murder. The defendant waived a jury trial on the count of having a weapon while under disability, which was thereafter severed from the remaining charges. A jury trial commenced as to the counts of aggravated murder.
 {¶ 3} Defendant was charged with murdering Kenneth Johnson and Starr Hudson on July 23, 2001. Prior to trial, the defense moved to exclude testimony about statements made by Hudson to law enforcement officers prior to her death wherein she identified "Maurice" as her killer. Over the defense's objection, the court allowed the testimony to be admitted at trial.
 {¶ 4} In the early morning hours of July 23, 2001, Johnson and Hudson were in front of a beverage store in Cleveland. At that time, defendant was a passenger in a car driven by Rudy Stewart. In addition to defendant and Stewart, two other persons were in that vehicle: Stewart's friend, Bobby Thomas, and defendant's friend, Robert Edwards. Stewart parked his car on the street next to the store. Edwards reportedly went to the store, but returned to tell defendant something. Defendant then accompanied Edwards to the store. Shortly thereafter, Thomas decided to buy some chips and headed towards the store. Stewart remained in the car.
 {¶ 5} Thomas testified that he saw defendant shoot a female and then shoot into the car next to her. Thomas then observed Edwards shooting a man falling out of the car. Stewart testified that he heard three gunshots and then observed Edwards taking a gun from defendant and shoot a body laying on the ground while defendant ran away.
 {¶ 6} Edwards' gave inconsistent accounts of what transpired. In his written statement to police, Edwards stated that he shot Hudson twice after defendant had shot Johnson twice. At trial, Edwards claimed that defendant shot Johnson twice and Hudson once before giving the gun to Edwards. At trial, Edwards claims he shot Hudson once and only after defendant had already done so. He essentially claimed that he felt pressured by the police to claim responsibility for Hudson's death in his written statement. Police witnesses testified that they arrived at the scene and observed a male, later identified as Edwards, shooting a man falling out of a car. Gunfire ensued when this male pointed the gun towards the police. In total, the officers fired twelve shots, one of which hit Edwards in the leg. The male fled and the officers pursued the suspect on foot. They could not locate him, but heard screams and returned to the scene. The officers found Hudson on the ground bleeding and asking for help. Johnson was found lying on the ground with his feet in the passenger side of the car and appeared dead.
 {¶ 7} The officers asked Hudson who had shot her and she responded, "Maurice" and continued to ask for help. Additional officers arrived to secure the scene. One of the officers located a blue steel .357 Magnum on the curb side of the street near the store. This is consistent with Edwards claim that he discarded the weapon on the side of the store on the street as he ran from the police. The officer identified State's Exhibit 8 as the recovered weapon. Edwards also believed Exhibit 8 to be the murder weapon and identified it as belonging to defendant. The weapon had four spent shell casings inside and two empty chambers. The police were unable to obtain any identifiable prints from the weapon.
 {¶ 8} Despite medical efforts, both Johnson and Hudson died. The county coroner's office determined that they each sustained two gunshots; all four being independently fatal wounds. The coroner ruled both deaths as homicide.
 {¶ 9} Further testimony established that Edwards initially fled to an apartment of an acquaintance and then later to the residence of Damon Williams and Tiffany Ragland. Williams testified that defendant had contacted him in the early morning of July 23, 2001, and said, "some f----- up shit just happened, I think my dude just got shot." (Tr. 934). Ragland confirmed that defendant arrived at her residence looking for Williams. She further stated that after defendant exited the bathroom, it smelled like peroxide and that she observed Williams taking a towel out of the house. Williams stated that both defendant and Edwards were at his house and were tending to Edwards' bleeding leg. Edwards' father picked him up and took him to a hospital in Akron where he was treated for the gunshot wound.[1] Williams made a police statement. However, at trial, Williams claimed he cannot read and that his written statement contained information that he did not recall providing to the police. Defense counsel extensively cross-examined Williams and the reporting officer on this issue.
 {¶ 10} Some time after July 23, 2001, both defendant and Edwards were arrested in connection with the murders. Edwards gave a written statement to police. Defendant gave an oral statement that the interrogating officers reduced to writing and which was further summarized and submitted to the jury as State's Exhibit 94, over the defense's objection.
 {¶ 11} The procedural facts pertinent to this appeal involve various rulings made by the court during trial. First, the defense objected to testimony by law enforcement officers concerning statements made by Hudson that identified "Maurice" as her killer. Secondly, the defense moved for a mistrial when an officer made reference to a so-called "Rockland gang." The court denied the motion, ordered the non-responsive reference stricken from the record, and instructed the jury not to consider it.
 {¶ 12} The defense also moved for a mistrial near the close of the case when it was discovered that one of the jurors had referred to a newspaper article concerning the case to several other jurors. The court questioned each of the affected jurors individually in chambers. All of the jurors consistently indicated that they were only told that the defendant's family was not expected to appear at the trial. Likewise, the juror responsible for disseminating the information also maintained that she knew nothing of the article except that it supposedly indicated that the defendant's family would not be in court.[2] The court denied the motion for mistrial finding the extent of the jurors' knowledge about the article "innocuous." (Tr. 1450-1451). The article itself was not made part of the record in this case and appellant's motion to supplement the record in this regard was denied.
 {¶ 13} Finally, at the close of the State's case-in-chief, the defense moved for acquittal, which the court denied. The defendant renewed the motion for acquittal at the close of evidence, which the court again denied.
 {¶ 14} The jury found the defendant not guilty of the aggravated murder of Kenneth Johnson, but found him guilty of the lesser included offense of murder of Kenneth Johnson. Likewise, the jury found the defendant not guilty of the aggravated murder of Starr Hudson, but found him guilty of the lesser included offense of murder of Starr Hudson. The jury found that defendant committed the murders with a firearm on or about his person. Thereafter, the court found defendant guilty of the bifurcated count of having a weapon while under disability. Defendant appeals from these convictions. We will address defendant's assignments of error in the order presented.
 {¶ 15} "I. The trial court erred by admitting into evidence a written summary of appellant's oral statement to the police."
 {¶ 16} Both parties refer us to State v. Jackson (1991),57 Ohio St.3d 29 as controlling the resolution of this assigned error. InJackson, the Ohio Supreme Court determined that it was error to allow an officer to read and submit to the jury a written summary of what the defendant allegedly said as a recorded recollection. The court reasoned that "a witness may read a recorded recollection to the jury if he `now has insufficient recollection to enable him to testify fully and accurately.' Evid.R. 803(5). Even then, the recollection `may not itself be received as an exhibit unless offered by an adverse party.' * * * [T]he natural effect of reading the statement would be to improperly bolster [the witness'] testimony." Id. at 37.
 {¶ 17} In this case, there was some concern about the extent of Detective Metzler's testimony since defendant reportedly made reference to his alleged involvement in a third murder when he made his oral statement to police. Therefore, Exhibit 94 was created to sanitize the oral statement and delete reference to this other potentially prejudicial act. Nonetheless, this case parallels the facts in Jackson in that the State did not claim that Detective Meztler forgot the details of defendant's oral statement. Instead, the detective read from State's Exhibit 94 to avoid prejudice to the defendant by referring to the third murder. Following Jackson, it was error for the court to submit this Exhibit to the jury since it was offered by the State rather than the defense. However, this is not the end of the inquiry.
 {¶ 18} As the State points out, while Jackson finds error it goes on to find it harmless under the given circumstances. In Jackson, the court found harmless error because the information was admissible as an admission under Evid.R. 801(D)(2)(a). The critical factor driving the result in Jackson was that the admission of such testimony as a recorded recollection was not prejudicial to the defendant. In this case, the admission of Exhibit 94 was also not prejudicial. Detective Metzler read the contents of the Exhibit to the jury without any objection from the defense. In addition, Exhibit 94 does not inculpate the defendant since he denied any involvement in the murders. For these reasons, we find that the admission of Exhibit 94 to the jury was harmless error and overrule this assignment of error.
 {¶ 19} "II. By refusing to declare a mistrial the trial court violated appellant's right to be tried by a fair and impartial jury as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 20} "A. The trial court erred by allowing juror misconduct.
 {¶ 21} "B. The trial court erred by allowing the prejudicial statements made by Detective Robert Moore."
 {¶ 22} Defendant argues that the court erred in denying a mistrial based upon a jurors alleged exposure to a newspaper article about the case and also when a testifying officer gave a non-responsive answer during direct examination that made reference to a gang. Defendant argues the these rulings denied him a fair trial. The State counters that the extent of the affected jurors' exposure to the news article was not prejudicial since voir dire determined that each of the jurors' reported knowledge about the article was harmless. The State further maintains that any error in admitting the isolated non-responsive reference to a gang was harmless since there is no reasonable probability that the testimony contributed to defendant's conviction. Thus, we must resolve whether the court should have granted a mistrial in either case. "[T]he granting or denying of a motion for mistrial rests within the sound discretion of the trial court. * * * A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused are adversely affected and this determination is, again, in the discretion of the trial court. * * * In order to demonstrate an abuse of discretion on these matters, a criminal appellant must be able to show that the trial court's decision was arbitrary, unreasonable or unconscionable." State v.Nichols (1993), 85 Ohio App.3d 65 (other citations omitted). A court must only declare a mistrial "when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991), 62 Ohio St.3d 118.
 {¶ 23} As to the alleged juror misconduct, we find that the trial court did not err in denying a motion for mistrial on this ground. First, the court identified all of the potentially affected jurors. Then, the court interviewed each juror individually. Apparently, at a lunch break, a group of jurors wondered aloud if a tearful woman attending the proceedings was connected to the defendant or victim's family. This prompted a female juror to say she did not think so because her mother had read an article that allegedly reported the defendant's family was not expected to attend the trial.
 {¶ 24} Each of the jurors independently corroborated that the extent of the reference to the article was that defendant's family was not expected at trial. The juror who disseminated the information further denied any additional knowledge of the article, denied reading the article, and stated that she told her mother not to tell her anything more about the article. The court concluded that the extent of the jurors' exposure to the article was "innocuous" and therefore denied the motion for mistrial. Given the record and representations made by each of the jurors, we conclude that the trial court did not abuse its discretion in denying a motion for mistrial on this ground.
 {¶ 25} Defendant also moved for a mistrial when an officer testified as follows:
 {¶ 26} "Q: Were you involved in this investigation in any significant manner?
 {¶ 27} "A: Not significant, but I knew the case was going on and I knew, I know some of the Rockland gang members.
 {¶ 28} "[Defense Counsel] Objection, your Honor, objection.
 {¶ 29} "The Court: Sustained. Side bar." (Tr. 969).
 {¶ 30} The court denied the motion for mistrial, but did immediately instruct the jury, as follows:
 {¶ 31} "I'm going to ask you to disregard any reference that [the detective] may have made something that was outside of something asked, specifically, reference to Rockland. Strike it from the record and treat that information as if you never heard it. And, Dectective , you're instructed to answer only the questions put to you." (Tr. 972).
 {¶ 32} In this instance, the detective's reference to the Rockland gang was non-responsive to any question posed and he did not indicate that defendant was part of that gang. We find any prejudice to defendant as a result of this stray remark to be minimal at best. However, the court cured any such prejudice by sustaining the objection, instructing the jury to disregard the reference, and admonishing the witness in the presence of the jury. "A jury is presumed to follow the instructions given to it by the trial judge." State v. Loza (1994), 71 Ohio St.3d 61, 75, [citation omitted] (referring to curative instructions given by a court to disregard statements relating to gang involvement, among other statements). For these reasons, we find that the trial court did not abuse its discretion when it denied defendant's motion for mistrial on this ground.
 {¶ 33} This assignment of error is overruled.
 {¶ 34} "III. The trial court erred when it admitted unreliable, out-of-court statements made by the decedent, Starr Hudson, where no exception to Evid.R. 802 applied."
 {¶ 35} Defendant contends that the court erred by allowing officers to testify about statements made by Starr Hudson that identified "Maurice" as the person who shot her. Defendant claims that the statements lack the necessary reliability to qualify as admissible hearsay. The State counters that the statements qualify as admissible hearsay under Evid.R. 803(2) as an excited utterance.
 {¶ 36} The excited utterance exception allows for the admission of hearsay testimony if (1) the statement relates to a startling event, and (2) the statement is made under the stress of that event. Evid.R. 803(2); State v. Taylor (1993), 66 Ohio St.3d 295. The statement does not need to be strictly contemporaneous with the startling event. State v.Duncan (1978), 53 Ohio St.2d 215; State v. Spencer (June 6, 1996), Cuyahoga App. No. 69490; State v. Hughley (Mar. 18, 1993), Cuyahoga App. No. 62070; State v. Williams (Apr. 4, 1991), Cuyahoga App. No. 58327;State v. Negolfka (Nov. 19, 1987), Cuyahoga App. No. 52905.
 {¶ 37} The trial court held an evidentiary hearing to determine the admissibility of this testimony prior to trial and outside the presence of the jury. In reaching its conclusion to admit the testimony, the court reasoned as follows:
 {¶ 38} "All of the exceptions to the hearsay rule seem to include as a fundamental philosophical underpinning some indicia of reliability.
 {¶ 39} "In the case of the excited utterance, it's a case of stress and excitement at the moment. In the dying declaration, it's imminency of death being an indication that people would not meet their maker lying.
 {¶ 40} "In this particular case somebody shot could be worried about that, but definitely worried about that. The statement is coming in." (Tr. 203).
 {¶ 41} Defendant claims the statement is "less reliable" because he believes Hudson never directly answered the officers when they asked her who shot her; because defendant stipulated that Hudson referred to him as "Reese"; and because the owner of the vehicle at the scene was an individual named Maurice Brenson. After a thorough review of the record, we are not persuaded by defendant's contentions.
 {¶ 42} First, the testimony indicates that Hudson said "Maurice shot me" on more than one occasion. (Tr. 186-187). Defendant claims that the fact that police questioning yielded this response should have precluded its admission. We disagree. "The admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." State v. Wallace (1988),37 Ohio St.3d 87, paragraph two of the syllabus.
 {¶ 43} In this case, the officer's inquiries into who shot Hudson were neither coercive nor leading. While Hudson was clearly concerned with obtaining medical assistance, the identity of her shooter would have also been a natural focus of her thoughts as she lie bleeding from gunshot wounds inflicted upon her quite recently. The questioning was not of the nature to have destroyed Hudson's nervous excitement over her reflective faculties.
 {¶ 44} We find that the additional factors cited by defendant do not undermine the reliability of the statement for purposes of admissibility, but are instead probative of whether defendant was the person Hudson was identifying. For example, the jury heard testimony that the automobile on the scene belonged to an individual named Maurice Brenson. This fact alone does not make Hudson's statement that "Maurice" shot her unreliable. It simply affords the jury further evidence towards evaluating the likelihood that Hudson was or was not referring to defendant. Likewise, the stipulation that Hudson referred to defendant as "Reese" does not foreclose the possibility that Hudson knew that his real name is Maurice.
 {¶ 45} Lastly, we note that the court appears to have found the statement admissible not only under Evid.R. 803(2) as an excited utterance, but also suggests that it considered this admissible under Evid.R. 804(B)(2) as a dying declaration. Ibid. Since neither party has raised the admissibility of the statement as a dying declaration, we do not address it. Notwithstanding, applying the foregoing law to this record, we conclude that Hudson's statement to law enforcement qualifies as an excited utterance under Evid.R. 803(2). Accordingly, this assignment of error lacks merit and is overruled.
 {¶ 46} "IV. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 47} In determining whether a criminal conviction is against the manifest weight of the evidence, this Court must examine the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses to determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. State v. Thompkins (1997),78 Ohio St.3d 380. This Court should grant a new trial only in an exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 48} First, defendant challenges the reliability of many of the witnesses who provided testimony against defendant. The record discloses that many of the witnesses were currently incarcerated, including Stewart, Thomas, and Edwards. However, the State disclosed that Edwards would receive the benefit of a plea agreement for his testimony against defendant. The State also disclosed that other witnesses may receive consideration in their cases if they continued to cooperate. While the witnesses, such as Edwards, downplayed the incentives offered for their testimony, this fact, standing alone, does not destroy the probative value of these witnesses' testimony which places defendant at the scene of the crime committing these offenses. Both Stewart and Thomas made statements to police near the time of the murders when they were not in jail. Their trial testimony is consistent with these statements that they made without any inducement.
 {¶ 49} We do note that there are inconsistencies among the witnesses' testimony about how many times defendant fired the weapon and whether he shot Hudson. However, we do not find that the discrepancies rise to a level that would allow us to say that the jury clearly lost its way in reaching its verdict. More importantly, we do not find that the evidence weighs so heavily against defendant's convictions for the lesser included offenses of murder so as to create a manifest miscarriage of justice. This assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., and SEAN C. GALLAGHER, J., concur.
[1] Edwards fabricated various stories to detectives in Akron to explain how he was shot.
[2] The juror explained that she does not subscribe to or read the paper. The juror had not read the article but learned of the information through her mother.