OPINION
{¶ 1} Appellant, Jillian M. Holder, appeals from the August 14, 2002 judgment entry of the Geauga County Court of Common Pleas denying her petition for postconviction relief.
 {¶ 2} Appellant was charged with one count of aggravated murder, one count of attempted aggravated murder, and one count of aggravated robbery for an incident that took place at the Clark Oil Gas Station in Chesterland, Ohio on February 18, 2000.[1] A jury trial took place on March 5, 2001, and continued until March 12, 2001. Appellant testified at the trial. She indicated that after Moorer shot Kovacic, Pearson ran around the counter and opened the cash register in the Clark Oil Gas Station. Appellant denied having any knowledge about the shooting or robbery.
 {¶ 3} In Geauga County Common Pleas Court case number 00 C 000135 and 00 JD 000096, appellant was found guilty of one count of aggravated murder, one count of aggravated robbery, and one count of attempted aggravated murder. All of the counts contained a firearm specification.
 {¶ 4} Appellant was sentenced on March 22, 2001, as follows: (1) for aggravated murder, life in prison with the eligibility of parole after twenty-five years; (2) for aggravated robbery, a prison term of three years; (3) for attempted aggravated murder, a five year prison term; and (4) for the firearm specifications, a prison term of three years. The terms were to be served consecutively. On April 18, 2001, appellant filed her notice of appeal with this court. Appellant filed a renewed motion to show cause and a motion for a new trial on July 10, 2001, while the appeal was pending. However, in an entry dated July 11, 2001, the trial court noted that it was divested of jurisdiction since an appeal was pending.
 {¶ 5} While her direct appeal was pending, appellant filed a petition for postconviction relief with the trial court on January 11, 2002. Appellant argued that the judgment was under attack for two reasons: (1) the prosecutor improperly withheld exculpatory evidence from her attorney in court proceedings which denied her due process of law, and (2) she was denied her Sixth Amendment right to effective assistance of counsel. On June 28, 2002, appellant filed an amended petition for postconviction relief, in which she abandoned her argument that the state withheld Pearson's eight-page statement. In the amended motion, she argued that the state withheld statements made by Pearson on March 2, 2001 and March 6, 2001.[2] On July 22, 2002, appellant filed a motion for default judgment. Thereafter, the state filed a brief in opposition on August 5, 2002. The trial court denied appellant's motion for default judgment and petition for postconviction relief on August 14, 2002. When this court addressed appellant's direct appeal, in a decision dated December 20, 2002, we affirmed the trial court's March 22, 2001 judgment entry. State v. Holder, 11th Dist. Nos. 2001-G-2345 and 2001-G-2350,2002-Ohio-7124. Appellant timely filed the instant appeal and now assigns the following as error:
 {¶ 6} "[1.] The trial court erred to the prejudice of appellant by concluding that there was no substantive basis to afford [appellant] an evidentiary hearing on her petition for postconviction relief.
 {¶ 7} "[2.] The trial court erred to the prejudice of appellant by stating that they could not conclude that there was a reasonable probability that had such hidden exculpatory evidence been disclosed to the defense, the result of [appellant's] trial would have been different.
 {¶ 8} "[3.] The trial court erred to the prejudice of [appellant] by impeding appellant's discovery process and denying appellant rightful access to public records containing exculpatory information."
 {¶ 9} Appellant's assignments of error are interrelated and will be addressed in a consolidated fashion. Under her first assignment of error, appellant asserts that the trial court erred by concluding that there was no substantive basis to afford her an evidential hearing on her petition for postconviction relief. For her second assignment of error, appellant argues that the trial court erred in concluding that the result of appellant's trial would have been different if the "hidden exculpatory evidence" had been disclosed to the defense. In the third assignment of error, appellant claims that the trial court erred by impeding the discovery process and denying her access to public records which contain exculpatory information. In all three assignments of error, appellant refers to statements made by Pearson which would exculpate her.
 {¶ 10} R.C. 2953.21(C) states that "[b]efore granting a hearing on a petition ***, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal."
 {¶ 11} A criminal defendant is not automatically entitled to a hearing on his petition for postconviction relief. State v. Kinley
(1999), 136 Ohio App.3d 1, 7. A hearing will be granted only if there are substantive grounds for relief set forth in the petition, or contained in the supporting affidavits, files and record of the case. Id. An alleged constitutional error that could have been raised and fully litigated on direct appeal is res judicata and cannot be litigated in the postconviction proceeding. Id. However, if the alleged error is supported by evidence outside the record and could not have been fully litigated on direct appeal, it is not subject to res judicata. Id. A trial may dismiss a petition for postconviction relief without a hearing if the petition and its supporting evidential documents fail to establish any substantive grounds for relief. State v. Perry (1967), 10 Ohio St.2d 175, 178.
 {¶ 12} Appellant argued that the state withheld material by failing to inform her that Pearson orally reaffirmed his February 19, 2000 statement in his June 11, 2002 sworn statement in violation of Bradyv. Maryland (1963), 373 U.S. 83. In Brady, the United States Supreme Court held that "[s]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87.
 {¶ 13} To demonstrate that the prosecution violated Brady, a defendant must prove the following: "(1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defense; and (3) the evidence was material." State v. West (Oct. 27, 2000), 11th Dist. No. 98-P-0132, 2000 WL 1616802, at 3, citing Moore v.Illinois (1972), 408 U.S. 786. The withholding of exculpatory or impeachment evidence constitutes a Brady violation only if it is "material." Id., citing United States v. Bagley (1985), 473 U.S. 667. With respect to the materiality prong, the Supreme Court has noted that "Bagley's touchstone of materiality is a `reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A `reasonable probability' of a different result is accordingly shown when the [g]overnment's evidentiary suppression `undermines the confidence in the outcome of the trial.'" (Citations omitted.) Kyles v. Whitley (1995), 514 U.S. 419, 434. The mere possibility that a piece of undisclosed information might have aided the defense or might have affected the outcome of the trial does not establish "materiality" in the constitutional sense. Holder, supra,2002-Ohio-7124, at ¶ 49.
 {¶ 14} The Supreme Court of Ohio has recognized that due process is violated when material evidence, favorable to the accused, is suppressed. State v. Jackson (1991), 57 Ohio St.3d 29, 33. However, undisclosed information that might have affected the outcome of the trial or helped the defense does not establish "materiality" in the constitutional sense. Id. "Brady requires a `reasonable probability' of a different outcome with the exculpatory evidence, that is, an undermined confidence in the trial result obtained without the exculpatory evidence." Id. Furthermore, the defense must prove a Brady violation and the subsequent denial of due process. Id. Finally, any undisclosed information must be evaluated in the context of the entire record in order to determine if there would be a reasonable doubt about the guilt of a defendant if the additional evidence was considered. Id. at 34.
 {¶ 15} In the case sub judice, appellant has failed to demonstrate that she was denied access to the statements made by Pearson, in which he stated that he and appellant were not aware of or part of any plan to commit the robbery. Pearson's original statement made on February 19, 2000, which appellant admits receiving, claimed that he and appellant knew nothing about the robbery and murder that occurred on February 18, 2000. Appellant argues that there were other statements given after the original statement and after appellant's trial.
 {¶ 16} However, after reviewing the statements Pearson made, they simply reaffirm what he said in his original eight-page statement, i.e. that he and appellant had no knowledge of or plan to commit murder or robbery. The subsequent statements were cumulative to what Pearson stated on February 19, 2000. Hence, even if the prosecution had knowingly withheld these later statements, they do not meet the standard of materiality set forth in Kyles, i.e., a reasonable probability of a different result. Moreover, since those statements contain virtually the same information as contained in Pearson's original statement, and the defense had the February 2000 statement in its possession at the time of appellant's trial, we conclude that the introduction of any other statement by Pearson proclaiming his and appellant's innocence would not have created a reasonable probability of a different result.
 {¶ 17} Hence, we conclude that appellant has failed to set forth any Brady statements that were withheld by the prosecution. In addition, as we stated in Holder, supra, 2002-Ohio-7124, ¶ 51: "appellant claims that Pearson's statements would have proved that she and Pearson were innocent as they knew nothing of the robbery and shooting. Yet, appellant's counsel had to determine the credibility of the statements since Pearson pleaded guilty after making the statements. Thus, it appears that her counsel decided not to pursue the statements made by Pearson. Further, appellant in her own testimony stated that Pearson was involved in the robbery and shooting. She also referred to him as a liar. Therefore, it is this court's determination that the evidence, which appellant now complains about, was immaterial to her defense as there was already sufficient evidence to show she was involved [in the crime]."[3] There was testimony from several witnesses which placed appellant with Pearson and Marcus Moorer and which demonstrated that appellant had knowledge of what was going to occur on the night of February 18, 2000.
 {¶ 18} Additionally, appellant contends that the prosecution's failure to supply her with written summaries of the oral statements made by Pearson violated Crim.R. 16. The record reveals that appellant mentioned the issue of Pearson's statements on direct appeal and, therefore, this claim is barred by res judicata. In the direct appeal, appellant alleged that "*** Pearson's statements would have proved that she and Pearson were innocent as they knew nothing of the robbery and shooting." Id. Further, in her direct appeal, appellant argued that "*** she only learned of Pearson's statement as to her lack of knowledge regarding the robbery after her trial and sentencing was concluded. Yet, the record on appeal contains an exhibit, which is a letter appellant received from Pearson while she was incarcerated and prior to her trial, in which Pearson stated that neither of them had anything to do with what transpired on February 18, 2000." Id. at ¶ 49. Hence, it is our view that the doctrine of res judicata bars the postconviction litigation of issues which were or could have been addressed on appeal. State v. Cole
(1982), 2 Ohio St.3d 112, 113.
 {¶ 19} Moreover, res judicata is a proper basis upon which to dismiss a postconviction relief petition without a hearing. Id. This court has addressed appellant's claims and concluded that they do not establish substantive grounds for relief. Accordingly, appellant has failed to present any substantive ground for relief that would entitle her to a hearing on her postconviction relief petition as required by R.C. 2953.21(C). It is our position that the trial court did not commit an error by dismissing the petition without a hearing.
 {¶ 20} Lastly, in her reply brief, appellant makes reference to a statement by Pearson dated June 11, 2002. Yet, Pearson made that statement long after appellant's trial ended and after appellant filed the petition for postconviction relief. Thus, the prosecution was not even in possession of it at the time of appellant's trial. Further, it is difficult to believe that the introduction of two or three other statements by Pearson, which mentioned what the original statement did (that Pearson and appellant had no knowledge of what had occurred), would have resulted in a different outcome at trial or would have persuaded the jury to support appellant's innocence.
 {¶ 21} For the foregoing reasons, appellant's assignments of error lack merit. The judgment of the Geauga County Court of Common Pleas is affirmed.
Judgment affirmed.
JUDITH A. CHRISTLEY and CYNTHIA WESTCOTT RICE, JJ., concur.
[1] During the February 18, 2000 incident at the Clark Oil Gas Station, Danielle Kovacic ("Kovacic") was shot and killed, and Rachel Cosgrove ("Cosgrove") was shot and wounded by Marcus Moorer ("Moorer"). Appellant and Wesley Pearson ("Pearson") were also present. Shortly after the shootings, appellant and Pearson were arrested in Cleveland. Pearson made a statement to the investigating police officers on February 19, 2000, which was eight pages in length. Six pages of the statement were questions asked to Pearson by the interviewer and answered by him, and one and one-half pages was a narrative written by Pearson. In that statement, he claimed that neither he nor appellant knew about the robbery or shooting.
[2] There was a sworn affidavit made by Pearson on June 22, 2001. In that four-page affidavit, Pearson avowed that neither he nor appellant had any knowledge that Moorer was going to shoot and kill anyone in the store. They did not know Moorer had any intent to rob the Clark Oil Gas Station. The written statement contained the information he stated on March 2 and March 6. There was also an eleven-page sworn statement made by Pearson on June 11, 2002, which reaffirmed his February 19, 2000 statement. In that statement, Pearson further alleged that he never knew Moorer was going to do anything in a place where Pearson had worked a year earlier. Pearson also mentioned that he told the prosecutor on March 2, 2001, that appellant had nothing to do and knew nothing about what Moorer did.
[3] We note that at the time of the direct appeal, the record did not contain all of the statements made by Pearson at the time of this appeal. However, after reviewing the statements, any statements made were cumulative as to what was said in the February 19, 2000 statement.