OPINION
{¶ 1} Appellant, Raymond Gau, appeals from the January 2, 2004 judgment entry of the Lake County Court of Common Pleas, denying his petition for postconviction relief.
 {¶ 2} On the evening of February 26, 1988, Krista Parisi ("the victim") went to the Honky Tonk Saloon in Grand River, Ohio, with her friends Dana DeBernardi and Colleen Vidmar. They met Colleen Vidmar's mother, Kathleen Vidmar, at the Honky Tonk Saloon, and the victim saw her sister's ex-fiance, William Hood ("Hood"), who introduced her to appellant.
 {¶ 3} At approximately 1:00 a.m., on the morning of February 27, 1988, the victim accepted a ride home from appellant. The victim testified at trial to the following sequence of events: she and appellant were joined in appellant's car by two of his friends, Bobby Gladding ("Gladding") and John Horn ("Horn"), and the four drove to the Argonne Arms Apartments in Painesville, Ohio. After Gladding and Horn exited the car, a heavyset boy approached the passenger side of the car. The victim attempted to get out of the car, but the boy hit her with a beer bottle and pushed her back into the car. The victim, appellant, and the heavyset boy drove to a church parking lot, where appellant allegedly raped the victim. Appellant left the victim in the parking lot, and she ran home. The victim eventually reported the incident to the police three weeks later.[1]
 {¶ 4} Appellant was indicted by the Lake County Grand Jury on November 29, 1988, on one count of rape, a felony of the first degree, in violation of R.C. 2907.02, and one count of kidnapping, a felony of the first degree, in violation of R.C. 2905.01. Appellant pleaded not guilty at his arraignment on December 12, 1988.
 {¶ 5} A jury trial commenced on November 13, 1989. On November 17, 1989, the jury found appellant guilty on both counts. The trial court sentenced him to serve an indefinite term of incarceration of ten to twenty-five years on the charge of rape, and an indefinite term of incarceration of five to twenty-five years on the charge of kidnapping, with the sentences to be served consecutively.
 {¶ 6} Appellant's conviction was subsequently affirmed by this court in State v. Gau (Mar. 29, 1991), 11th Dist. No. 89-L-14-172, 1991 Ohio App. LEXIS 1471, ("Gau I"). Appellant sought leave to appeal his conviction to the Supreme Court of Ohio. The Supreme Court denied certiorari on September 18, 1991. State v. Gau (1991), 62 Ohio St.3d 1405.
 {¶ 7} On August 8, 1996, appellant filed a petition for postconviction relief. In a July 7, 1997 judgment entry, the trial court determined that appellant failed to demonstrate sufficient facts to establish his claim for relief and, therefore, was not entitled to an evidential hearing on his petition. Appellant appealed that decision to this court, submitting six assignments of error. In his second assignment of error, appellant argued that the prosecution had failed to disclose relevant favorable evidence, specifically, statements made by Colleen Vidmar and Hood. In his fourth assignment of error, appellant argued that he received ineffective assistance of counsel because his trial counsel failed to discover the fact that the victim had been hospitalized as the result of an automobile accident on February 1, 1988. Appellant argued that the medical records from this accident were relevant to show that bruises visible on the victim's face and legs after her alleged rape by appellant on February 27, 1988, resulted from that accident and not from an assault on the part of appellant.
 {¶ 8} In State v. Gau (Dec. 11, 1998), 11th Dist. No. 97-L-197, 1998 Ohio App. LEXIS 5991, ("Gau II"), we held that appellant's second and fourth assignments of error had some merit and that he had presented sufficient evidence outside of the trial court record to warrant further review of some of the arguments made within those two assignments of error. We reversed the trial court and remanded the matter for a hearing with instructions.
 {¶ 9} The trial court held the evidential hearing mandated by our ruling in Gau II on December 17, 1999, and denied appellant's petition in its June 1, 2000 judgment entry. Appellant filed an appeal alleging that the trial court improperly conducted the evidential hearing. On August 16, 2002, in Gau III, this court reversed the judgment of the trial court and remanded the matter for the trial court to conduct a second evidential hearing, which commenced on July 9, 2003. The trial court issued its findings of fact and conclusions of law on September 15, 2003.
 {¶ 10} Pursuant to its January 2, 2004 judgment entry, the trial court denied appellant's petition for postconviction relief for the third time. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 11} "[1.] The trial court erred by denying appellant's petition for [postconviction] relief in violation of appellant's right to due process and a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution.
 {¶ 12} "[2.] The trial court abused its discretion by denying appellant's petition for [postconviction] relief.
 {¶ 13} "[3.] The trial court erred by denying appellant's petition for [postconviction] relief because [appellant] received ineffective assistance of trial counsel in violation of his rights pursuant to theSixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 14} Initially, we note that appellant's arguments contained in his three assignments of error here were previously raised. In Gau II, at 29, we stated that:
 {¶ 15} "[w]hile we are reversing, in part, the trial court's decision with regard to appellant's petition for postconviction relief, we wish to emphasize that appellant has not proven that the prosecution willfully
failed to disclose favorable evidence to the defense, as argued within his second assignment of error, or that appellant's trial counsel was wholly ineffective, as alleged within his fourth assignment of error. Notwithstanding this determination, however, we believe that appellant, under the circumstances of this case, has presented sufficient evidence outside of the trial court record to warrant further review of some of the arguments made within these two assignments of error. Specifically, the trial court is instructed to conduct an evidentiary hearing as to the extent of any injuries the victim may have sustained immediately before and after the alleged incident with appellant as well as evaluating any inconsistencies that may develop in the victim's report of the crime." (Emphasis sic.)
 {¶ 16} Thus, in Gau II, we determined that appellant's arguments regarding prosecutorial misconduct and ineffective assistance of trial counsel had some merit, and we remanded the matter to the trial court to conduct an evidential hearing.
 {¶ 17} In Gau III, appellant again raised assignments of error regarding the trial court's alleged error by failing to grant his postconviction relief petition with respect to prosecutorial misconduct and that he received ineffective assistance of trial counsel. In Gau
III, however, we did not address those assignments. Rather, this court determined that appellant's assignment of error regarding the fact that the trial court erred in not providing findings of fact and conclusions of law pursuant to R.C. 2953.21(C) had merit. Thus, we reversed the judgment of the trial court and remanded the matter for the trial court to issue findings of fact and conclusions of law.
 {¶ 18} Based on the foregoing, res judicata does not apply to appellant's assignments of error here in their entirety since these assignments have yet to be fully resolved.[2] See State v. Jenkins
(1987), 42 Ohio App.3d 97, 99; State v. Lawson (1995),103 Ohio App.3d 307, 315. Thus, we will provide a merit analysis to appellant's three assignments of error.
 {¶ 19} In his first assignment of error, appellant argues that the trial court erred by denying his petition for postconviction relief. Appellant posits two issues for review. In his first issue, appellant contends that the trial court erred by denying his petition for postconviction relief pursuant to R.C. 2953.21 where hearings on such petition reveal prosecutorial misconduct with respect to withholding exculpatory evidence and where the cumulative effect of such evidence undermines any confidence in appellant's conviction. In his second issue, appellant alleges that the trial court erred by denying his petition for postconviction relief pursuant to R.C. 2953.21 where the record reveals that the prosecution withheld exculpatory evidence and where the cumulative effect of such evidence undermines any confidence in appellant's conviction. Because appellant's first and second issues are nearly identical, we will address them in a consolidated fashion.
 {¶ 20} R.C. 2953.21(A)(1)(a) provides: "[a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of [his] rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief."
 {¶ 21} In State v. Davis, 11th Dist. No. 2003-P-0077, 2004-Ohio-6684, at ¶ 23-25, this court stated that:
 {¶ 22} "[i]n Brady v. Maryland (1963), 373 U.S. 83, 87 * * *, the United States Supreme Court held that `[s]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'
 {¶ 23} "To prove the prosecution violated Brady, a defendant must show that: `(1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defense; and (3) the evidence was material.' State v. West (Oct. 27, 2000), 11th Dist. No. 98-P-0132, 2000 Ohio App. LEXIS 5014 * * *, at 3, citing Moore v. Illinois (1972),408 U.S. 786 * * *. The withholding of exculpatory or impeachment evidence constitutes a Brady violation only if it is `material.' West,
supra, citing United States v. Bagley (1985), 473 U.S. 667 * * *. With respect to the materiality prong, the United States Supreme Court has noted that `"Bagley's touchstone of materiality is a `reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A `reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression `undermines the confidence in the outcome of the trial.'"' (Citations omitted.) West, supra, quoting Kyles v. Whitley (1995), 514 U.S. 419, 434
* * *.
 {¶ 24} "The Supreme Court of Ohio has recognized that due process is violated when material evidence, favorable to the accused, is suppressed. State v. Jackson (1991), 57 Ohio St.3d 29, 33 * * *. However, undisclosed information that might have affected the outcome of the trial or helped the defense does not establish `materiality' in the constitutional sense. Id. `Brady requires a "reasonable probability" of a different outcome with the exculpatory evidence, that is, an undermined confidence in the trial result obtained without the exculpatory evidence.' Id. The defense must also prove a Brady violation and the subsequent denial of due process. Id. Finally, any undisclosed information must be evaluated in the context of the entire record in order to determine if there would be a reasonable doubt about the guilt of a defendant if the additional evidence was considered. Id. at 34." (Parallel citations omitted.)
 {¶ 25} In the case at bar, on appeal in Gau II, this court determined that appellant did not prove a Brady violation with respect to the victim's injuries from her prior automobile accident. However, we remanded the matter to the trial court to conduct an evidential hearing regarding the extent of any injuries the victim may have sustained as well as to evaluate any possible inconsistencies in her report of the crime. In Gau III, we stated that the trial court failed to issue findings of fact and conclusions of law. On remand and after conducting appellant's second evidential hearing, the trial court made the requisite findings of fact and conclusions of law with respect to the accident report, the victim's injuries that she sustained, and whether the prosecution willfully or inadvertently failed to provide information concerning the automobile accident to defense counsel.
 {¶ 26} The trial court considered the relevant testimony and exhibits regarding the victim's injuries following the automobile accident and whether those injuries claimed to have been from the rape could have been attributed to the accident. In its findings of fact and conclusions of law, the trial court determined that the evidence failed to establish that the physical injuries that were present approximately three weeks after the automobile accident could not be attributed to that accident. The trial court further stated that there had been a lack of evidence presented to demonstrate that the prosecution either willfully or inadvertently failed to provide information concerning the automobile accident to appellant's counsel. We agree. At the second evidential hearing, Lieutenant William Chamar testified that he was unaware that the victim was involved in a car accident preceding the rape and that he had never seen the crash report. As such, the trial court properly concluded that the evidence presented did not demonstrate that the prosecution had knowledge of the accident report and failed to disclose it to defense counsel. Thus, the accident report does not amount to exculpatory or material evidence that undermines the confidence in the outcome.
 {¶ 27} At trial, the victim's sister, Andrea Parisi, testified that when she saw the victim the day after the rape, she wore an ungodly amount of make-up, had a huge bruise on her face, and bruises all over the tops and inner parts of her thighs. Colleen Vidmar testified that she did not notice any bruises on the victim on the night before the rape occurred. However, Colleen Vidmar stated that when she saw the victim a couple of days later, she noticed bruising on the victim's face, back, thighs, legs, and stomach area. Hood also testified that when he saw the victim at the Honky Tonk Saloon before she left the bar and prior to the rape, she had no bruising. Hood indicated that when he saw the victim the next day, she was wearing a great deal of make-up on her face, and he noticed a bruise on her upper thigh.
 {¶ 28} The foregoing testimony taken in conjunction with the medical records establish that the victim's injuries resulted from the attack by appellant, not the car accident which occurred three weeks earlier. Therefore, the accident report and the medical records which reveal only minor bruising are neither exculpatory nor material in any manner that would undermine the confidence in the outcome. In addition, appellant's allegation that Captain Richard Kline's ("Captain Kline") testimony from the second evidential hearing is "new evidence" supporting his contention that the prosecution had knowledge of the accident report and failed to disclose it is nothing more than mere speculation. Captain Kline testified that he was records custodian and had no recollection of any items being added or removed from the file. Captain Kline stated that there was no indication of when the accident report was actually placed in the file.
 {¶ 29} Appellant alleges that it did not have the victim's March 25, 1988 audio-taped statement given to police. However, defense counsel viewed her statement and it was marked as state's exhibit number two at trial. The trial court reviewed this exhibit along with the victim's March 17, 1989 written statement. The jury had all information pertaining to any inconsistencies by the victim at trial. We note that any alleged inconsistencies by the victim, Dana DeBernardi, and Colleen Vidmar, with respect to their testimony at trial, could have been raised on direct appeal and, thus, are barred under the doctrine of res judicata.
 {¶ 30} Appellant contends that the written statement given by Hood to the police in the original investigation in which he stated that he drove the victim to the Honky Tonk Saloon was an exculpatory document that should have been provided to him by the prosecution. We agree with the trial court that the manner with respect to how they arrived is irrelevant and, therefore, is not exculpatory nor can it be qualified as impeachment evidence. In addition, appellant also makes reference regarding whether the victim approached appellant or appellant approached her. Hood's written statement indicates that appellant approached the victim and asked her to leave. The trial court properly determined that Hood's statement was not exculpatory no matter who asked who to leave since the evidence established that the victim and appellant left the bar together.
 {¶ 31} Appellant alleges that Gladding's verbal statement and his testimony from the first evidential hearing contradict the victim's account of the incident regarding who was in the car when she and appellant left the Honky Tonk Saloon together. However, we agree with the trial court that Gladding's statement was not material to appellant's guilt or innocence and, therefore, was not prejudicial in such a way as to undermine the confidence in the outcome.
 {¶ 32} Lastly, appellant contends that Colleen Vidmar's March 7, 1988 written statement regarding what she claimed the victim told her about the incident was exculpatory and that the prosecution withheld this information from defense counsel in violation of Brady. The trial court determined that Colleen Vidmar's written statement was in the possession of the defense subsequent to his trial, but any issues regarding her statement were not raised on direct appeal, and, thus, are subject to res judicata. We note, however, that Colleen Vidmar's written statement would not be subject to res judicata, since the record shows that defense counsel did not receive a copy until forty-two days after appellant was sentenced, twelve days after the filing of the notice of appeal. In any event, appellant should have filed a motion for new trial.
 {¶ 33} Based on the foregoing, appellant's first and second issues are not well-taken. Appellant's first assignment of error is without merit.
 {¶ 34} In his second assignment of error, appellant contends that the trial court abused its discretion by denying his petition for postconviction relief. Appellant stresses that the trial court abused its discretion by denying his petition pursuant to R.C. 2953.21, where the cumulative effect of newly discovered evidence and/or discovery violations and/or ineffective assistance of counsel undermine the confidence of his conviction and illustrate that the conviction must be reversed in order to discontinue a manifest injustice.
 {¶ 35} In reviewing a trial court's disposition of a petition for postconviction relief, this court stated in State v. Smith (Sept. 24, 1999), 11th Dist. Nos. 98-T-0097 and 98-T-0098, 1999 Ohio App. LEXIS 4472, at 8, that the hybrid analysis is a more precise statement of the applicable standard of review rather than the phrase "abuse of discretion." "An appellate court applies a hybrid standard of review to the trial court's disposition of a postconviction relief petition. The court of appeals should accept the trial court's factual findings if they are supported by competent, credible evidence. Upon accepting such findings of fact, the reviewing court should then conduct a de novo
review of the trial court's conclusions of law and concomitant adjudication of the postconviction relief petition * * *." (Emphasis sic.) Id.
 {¶ 36} In the instant matter, as previously addressed in appellant's first assignment of error, the trial court complied with this court's previous mandates in Gau I and Gau II by providing findings of fact and conclusions of law with its reasons for denying appellant's postconviction relief petition. In its fourteen-page judgment entry, the trial court determined, pursuant to R.C. 2953.21, that after analyzing the testimony and exhibits admitted at both evidential hearings as well as the applicable case law, appellant failed to demonstrate that there was a denial or infringement on his rights that would render his judgment of conviction void or voidable under the Ohio or United States Constitutions. After conducting a two-day hearing, the trial court properly concluded for the third time that appellant failed to present evidence that undermined the confidence in the outcome of the trial. Appellant's second assignment of error is without merit.
 {¶ 37} In his third assignment of error, appellant alleges that the trial court erred by denying his petition for postconviction relief because he received ineffective assistance of trial counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution. Appellant stresses that the trial court erred by denying his petition pursuant to R.C. 2953.21 because the hearings revealed that his trial counsel failed to adequately investigate and call relevant witnesses.
 {¶ 38} Strickland v. Washington (1984), 466 U.S. 668, 687 states:
 {¶ 39} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 40} "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland, supra, at 694, states: "[t]o warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 41} This court stated in State v. Rudge (Dec. 20, 1996), 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807, at 35-36, that: "`[s]trategic and tactical decisions will not form the basis of a claim of ineffective assistance of counsel, even if there had been a better strategy available to him. (* * *)' * * * `"Errors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel." * * *.' State v. Lundgren (Apr. 22, 1994), [11th Dist. No. 90-L-15-125, 1994 Ohio App. LEXIS 1722], at 40-41."
 {¶ 42} In the case sub judice, pursuant to the trial court's findings of fact and conclusions of law, the evidence that appellant takes issue with here was neither exculpatory nor material in such a manner that its absence undermined the confidence in the outcome of the trial. We note that appellant failed to file a motion for new trial. In addition, with respect to the accident report and other "suppressed" evidential statements that appellant asserts that his counsel failed to discover, none were found to be exculpatory or impeaching. Pursuant to Strickland,
supra, appellant fails to show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. Appellant's third assignment of error is without merit.
 {¶ 43} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
O'Neill, J., O'Toole, J., concur.
[1] The foregoing facts were taken from State v. Gau, 11th Dist. No. 2000-L-109, 2002-Ohio-4216 ("Gau III"). However, we note that at the first evidential hearing on December 17, 1999, Gladding's testimony contradicted the victim's account regarding who was in the car when she and appellant left the Honky Tonk Saloon, alleging that he was not in the vehicle. At the second evidential hearing on July 9, 2003, Chief Jerry White with the Painesville Police Department testified that he believed that Gladding was not in appellant's car and, therefore, was not a suspect in the investigation.
[2] We note that some issues contained within appellant's first assignment of error are subject to res judicata, which will be subsequently addressed in the opinion.