[Cite as *State v. Bennett*, 2012-Ohio-194.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellee                    :        C.A. CASE NO.    24576

v.                                        :        T.C. NO.    10CRB12418

FRED A. BENNETT                           :      (Criminal appeal from
                                        Municipal Court)
    Defendant-Appellant                   :

                                          :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    20th    day of    January   , 2012.

. . . . . . . . . .

EBONY N. WREH, Atty. Reg. No. 0080629, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

MICHAEL HALLOCK JR., Atty. Reg. No. 0084630, P. O. Box 292017, Dayton, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Defendant-appellant Fred Bennett, Jr., appeals from his convictions for criminal damaging and aggravated menacing.

I

{¶ 2} On the evening of December 27, 2010, Artis Gentry and his wife, Chrystal Ballard, were at a family gathering at the home of Artis's sister, Denise Gentry. Appellant Bennett, who was dating Denise, was also present. During the gathering, Bennett argued with Artis and Chrystal, and the parties pushed each other around. Bennett reminded Artis and Chrystal that he knew where they lived and said that he would "get" them. After Bennett spit on Chrystal, Artis and Chrystal left with two of their children. Chrystal dropped Artis off at their home and went to run some errands.

{¶ 3} A couple of hours later, Artis heard a crashing noise outside. When Artis looked out the window, he saw Bennett's van parked in front of the house. Bennett was standing in Artis's driveway, swinging a yellow club toward Artis's car. Artis heard two more crashes and went outside. Artis saw Bennett back away from the car, get into his own van, and drive away. Three of Artis's car windows were broken. When the couple had arrived at home earlier in the evening, they had moved two car seats from Chrystal's van to Artis's car, and the windows had been intact at that time. A short time later, Chrystal returned home with the couple's cell phone, and they called the police.

{¶ 4} The following evening, Artis heard a vehicle outside. He looked out the window and saw Bennett's van stopped in front of his house. After a few seconds, Bennett drove slowly to the corner and turned. Artis twice told his wife to call the police, but she did not do so at first. Bennett drove very slowly around the block and entered the alley behind the Gentrys' home, where he stopped again. Bennett drove away, but a few minutes later Artis and Chrystal saw him walking toward the front of their house. Bennett approached Chrystal's van, which was parked next to Artis's car in their driveway. Bennett

was holding a long bar of some kind in one hand, and he repeatedly slapped the bar against his other hand. While Chrystal called the police, Artis opened the front door. Bennett walked back into the street, and Artis believed that he saw a gun under Bennett's shirt. Artis and Chrystal feared that Bennett was there to harm one of them and/or their property.

{¶ 5} The following day, Artis and Chrystal obtained a protection order against Bennett. Bennett was charged with criminal damaging and two counts of aggravated menacing. Following a bench trial, Bennett was found guilty of all charges and sentenced accordingly. Bennett appeals.

II

{¶ 6} Bennett's First Assignment of Error states:

{¶ 7} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY CONVICTING THE DEFENDANT BECAUSE THE STATE'S EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR CRIMINAL DAMAGING."

{¶ 8} Bennett's Second Assignment of Error states:

{¶ 9} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY CONVICTING THE DEFENDANT BECAUSE THE STATE'S EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR AGGRAVATED MENACING."

{¶ 10} Bennett argues that his convictions were not supported by sufficient evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the

syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 11} We first consider Bennett's criminal damaging conviction, in violation of R.C. 2909.06(A)(1), which states that no person shall knowingly cause a substantial risk of physical harm to another's property without the other person's consent. Bennett insists that the State's evidence was insufficient to support his conviction because the evidence was all circumstantial. However, a defendant may be convicted based solely upon circumstantial evidence because circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 272; *State v. Nicely* (1988), 39 Ohio St.3d 147. In fact, in some cases, "circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence." *State v. Jackson* (1991), 57 Ohio St.3d 29, 38. See, also, *State v. Reed*, 155 Ohio App.3d 435, 2003-Ohio-6536, ¶56.

{¶ 12} Although Artis did not see Bennett making contact with the car windows, his testimony was sufficient to support a conviction for criminal damaging. When Artis heard a crash outside of his home, he looked out of his window and saw Bennett standing in his driveway, swinging a yellow club toward his car. Artis heard two more crashes, and he went outside in time to see Bennett back away from Artis's car, get into his own van, and

drive away. Artis found three of his car windows broken, and both he and his wife were certain that the windows had been intact when they had arrived home a couple of hours earlier. When viewed in a light most favorable to the prosecution, this evidence was sufficient to prove that Bennett broke the windows of Artis's car.

{¶ 13} We next turn to Bennett's convictions for two counts of aggravated menacing, in violation of R.C. 2903.21(A). That statute prohibits anyone from knowingly causing another to believe that the offender will cause serious physical harm to the person or property of the other person or a member of his immediate family.

{¶ 14} Bennett claims that the State failed to prove that Artis and Chrystal had a reasonable fear of serious physical harm because he never said anything to them on December 28th. The statute, however, does not require that the threats be either direct or explicit. See, e.g., *State v. Akbar* (Nov. 2, 2001), Montgomery App. No. 18766, citing *Dayton v. Davis* (1999), 136 Ohio App.3d 26. Moreover, the trial court was not required to consider only the evidence of the events of December 28th when the court also had before it evidence of Bennett's words and actions on the previous night.

{¶ 15} The State's evidence shows that on the evening of December 27th, Bennett had an altercation with Artis and Chrystal. During that altercation, the parties pushed each other around, and Bennett spit on Chrystal. Bennett reminded the couple that he knew where they lived, and he made unspecified threats to "get" them. Later that night, Bennett went to the couple's home and broke three of their car windows. The next night, Bennett returned to the couple's home and was seen walking toward their home and approaching their van, all the while repeatedly smacking a bar against his hand.

{¶ 16} Artis testified that he "felt threatened" as soon as he saw Bennett outside of his house on the 28th. Bennett slowly drove past the house a couple of times, and then he parked and began walking toward the house. Artis thought that Bennett had a gun under his shirt, and he saw Bennett slapping a bar against his hand. As a result, Artis believed that Bennett was there "to do bodily harm or harm to my vehicle."

{¶ 17} Chrystal testified that in light of Bennett's behavior on the previous evening and her knowledge of his history of violence, she felt threatened by his presence at her home on the 28th. Although Chrystal did not immediately call the police when she saw Bennett driving past the house, she did call when he began to approach the home on foot. Chrystal explained, "I believe that he would come and do some criminal damaging to my property and if he could get close to me he would do the same to me." Viewing the evidence in the State's favor, we conclude that the State offered sufficient evidence to support Bennett's convictions for aggravated menacing.

{¶ 18} Bennett insists that Artis and Chrystal could not have been in fear for their safety, or they would have called the police sooner, and they would not have opened their front door. However, the trial court, as the trier of fact, was in the best position to decide whether Artis and Chrystal's claims that they were in fear for their safety were unbelievable, in light of their decisions to briefly delay calling the police and to open their front door after they did call the police.

{¶ 19} Both of Bennett's assignments of error are overruled.

III

{¶ 20} Having overruled both of Bennett's assignments of error, we affirm the

judgment of the trial court.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Ebony N. Wreh
Michael Hallock Jr.
Hon. John S. Pickrel