[Cite as *State v. Black*, 2018-Ohio-4878.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                  :
                                               :
    Plaintiff-Appellee                         :      Appellate Case No. 27888
                                               :
v.                                             :      Trial Court Case No. 2016-CR-1151/2
                                               :
DION BLACK                                     :      (Criminal Appeal from
                                               :       Common Pleas Court)
    Defendant-Appellant                        :
                                               :

. . . . . . . . . .

O P I N I O N

Rendered on the 7th day of December, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 North Detroit Street, Suite 102, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Dion Black was convicted after a jury trial in the Montgomery County Court of Common Pleas of possession of heroin in an amount equal to or exceeding 250 grams, a first-degree felony (R.C. 2925.11(C)(6)(f)), and possession of cocaine in an amount of 10 grams or more, but less than 20 grams, a third-degree felony (R.C. 2925.11(C)(4)(c)). The trial court sentenced him to a mandatory maximum sentence of 11 years in prison for possession of heroin and to 12 months in prison for possession of cocaine, to be served concurrently.

**{¶ 2}** Black appeals from his conviction, claiming (1) that his conviction for possession of heroin was based on insufficient evidence and against the manifest weight of the evidence and (2) that the trial court erred in sentencing him as a major drug offender. For the following reasons, the trial court's judgment will be affirmed.

### I. Factual and Procedural History

**{¶ 3}** The State's evidence at trial established the following facts.

**{¶ 4}** On October 7, 2015, United States Postal Inspector Suzanne McDonough noticed a large flat-rate box mailed from Morena Valley, California, an area that was known to her as a "drug source location." McDonough looked at the time that the package was mailed and investigated the sender's name and address, as identified on the package. The sender was James Collins at a specific address in Morena Valley; there was no James Collins associated with that address. McDonough also checked whether the name for the addressee was associated with the address to which the package was mailed. The recipient of the package was Brandi Anderson, but there was no such person associated with the address. McDonough did not know whether Brandi

Anderson or James Collins was a real person.

{¶ 5} McDonough contacted the Dayton Police Department and asked to have a narcotics K-9 check the parcel. McDonough chose several similar packages, hid them in an office or hallway in the postal facility, and placed the suspect package among them. When the police K-9 passed the suspect parcel, the dog alerted on it. McDonough had the handler complete an affidavit that the K-9 had positively alerted on the parcel, and McDonough obtained a federal search warrant to open the parcel.

{¶ 6} When McDonough opened the parcel, she saw a candle and potpourri; McDonough discovered approximately 8.9 ounces of heroin inside the candle. McDonough contacted Detective Anthony Hutson of the Montgomery County Sheriff's Office R.A.N.G.E. Task Force, the regional task force for drugs and gun enforcement, to see if the task force was interested in conducting a controlled delivery of the drugs.

{¶ 7} After McDonough brought the package to Hutson's attention, R.A.N.G.E. Task Force detectives researched the address and names associated with the parcel. Detective Joshua Samples testified that he researched the delivery address using several law enforcement databases, looking at prior calls for service, people who carry that address on their driver's license or vehicle, and the like. Samples found no connection between the address and the name "Brandi Anderson." The task force also obtained an anticipatory search warrant for the residence.

{¶ 8} On October 8, 2015, McDonough met with R.A.N.G.E. Task Force officers regarding the controlled delivery and execution of the search warrant. Numerous detectives were assigned different duties, such as entry team officers, delivery surveillance officer, and perimeter officers. Later that day, with task force officers

nearby, McDonough, as an undercover mail carrier, went to the address listed on the parcel to deliver the package. A man wearing black pajama bottoms (later identified as Black) answered the door, and McDonough stated that she had a parcel for Brandi Anderson. Black was on the phone, and he acknowledged her by nodding. McDonough handed Black the parcel and left the area.

{¶ 9} After the package was delivered, R.A.N.G.E. Task Force officers approached the residence to execute the search warrant on the house. When Detective Samples approached the residence, two men were on the porch, one of whom was holding the parcel. Both individuals ran. One man, Perry Thompson, came off the porch but laid down on the front walkway upon seeing other officers; the other, Black, ran around the house with the parcel.

{¶ 10} Detective Raymond Swallen, who was assisting with the execution of the warrant, was located at the rear of the house with Detective Jason Leslie. Swallen saw Black running from the right side of the house (from Swallen's perspective), carrying the parcel like a football. Swallen and Leslie ran towards Black, yelling "Stop, police." Black threw his cell phone and the parcel over the fence of an adjacent yard. The officers apprehended and handcuffed Black, patted him down for weapons, and after the house was secured, took Black around the front of the house to a police car. Swallen searched Black prior to placing him in a cruiser and located cash, a Social Security card, and what appeared to be crack cocaine in Black's pants pocket. Hutson, Swallen, and Leslie identified Black at trial.

{¶ 11} Upon executing the search warrant, Detective Hutson found paperwork, including a shipping label addressed to Black at that residence, in the living room of the

house.   A nightstand in a basement bedroom had a shipping label with the sender listed as "Mark Black" from that address.   A utility bill with Black's information on it (but with a different address) was located in a vehicle parked in the driveway.   Upon searching the house, the officers also found firearms, a digital scale, empty gel capsules (which Hutson testified was indicative of drug trafficking, mostly heroin), a blender that appeared to have been used to "cut" drugs, and a plate with a knife.

{¶ 12} During cross-examination, Detective Hutson testified that Black was subject to two unrelated traffic arrest warrants on October 8, 2015.   Hutson agreed that he had seen many people run from the police because of warrants.

{¶ 13} The suspected heroin and crack cocaine were submitted to the Miami Valley Regional Crime Laboratory for analysis.   Todd Yoak, a forensic chemist, testified that the substances were 16.02 grams, plus or minus 0.02 grams, of cocaine and 251.15 grams, plus or minus 0.02 grams, of heroin.

{¶ 14} In July 2016, Black was indicted for possession of heroin (equal to or exceeding 250 grams) with a major drug offender specification and for possession of cocaine (10 grams or more, but less than 20 grams).   Black subsequently moved to suppress all physical evidence obtained by law enforcement and any statements he may have made to law enforcement officers.   After a hearing, the trial court denied the motion.

{¶ 15} A jury trial commenced on December 12, 2017.   Prior to opening statements, the State orally moved to amend the indictment to strike the major drug offender specification.   The prosecutor explained, "We've discussed in chambers how it's surplus language, that the statute is essentially duplicative of that.   So just for the sake of not confusing the jury, we'd ask for the indictment to be amended, thus."   The

trial court granted the motion without objection.

{¶ 16} During the trial, the State presented the testimony of Postal Inspector McDonough, of Detectives Hutson, Samples, Swallen, and Leslie, and of Yoak. The State also offered several exhibits, including photographs taken during the execution of the search warrant on October 8, 2015, the parcel intercepted by McDonough, the search warrant, gel caps, and the drugs. Black did not present any witnesses, but offered several exhibits that were used during the cross-examination of Hutson. Following deliberations, the jury found Black guilty of both drug offenses, including specific findings that Black possessed the drugs in the amounts alleged in the indictment.

{¶ 17} The trial court held a sentencing hearing on January 2, 2018, following a presentence investigation. After hearing Black's comments and responding to those comments, the trial court reviewed some of the factors set forth in R.C. 2929.12, including that "there is a major drug offender specification here." The court told Black that "this is a mandatory sentence, given the major drug offender specification." The court then sentenced Black to 11 years in prison for possession of heroin and to 12 months in prison for possession of cocaine, to be served concurrently. The court found Black to be indigent and waived the mandatory fine, but ordered Black to pay court costs. The trial court's judgment entry, filed two days later, was consistent with the judge's oral pronouncement.

{¶ 18} Black appeals from his conviction, raising two assignments of error.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 19} In his second assignment of error, Black claims that his conviction for possession of heroin was based on insufficient evidence and was against the manifest

weight of the evidence. Black does not challenge his conviction for possession of cocaine.

{¶ 20} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 21} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. White*, 2018-Ohio-3076, __ N.E.3d __, ¶ 38 (2d Dist.),

citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 23} Black was convicted of possession of heroin and cocaine, both in violation of R.C. 2925.11(A). That statute provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶ 24} Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

{¶ 25} " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession of a drug may be either actual physical possession or constructive possession. *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18. "A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession." (Citations omitted.) *Mabry* at ¶ 18. "Establishment of ownership is not required." *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 33. In determining whether an individual possessed an item, it is necessary to consider all of the facts and circumstances

surrounding the incident.    *Mabry* at ¶ 20.

{¶ 26} In his appellate brief, Black emphasizes that he was not a resident of the home where the parcel was delivered, that the parcel was not addressed to him, that there was no evidence that he signed for the parcel (thereby demonstrating his knowledge of the arrival of the package), that the parcel was unopened when the task force officers arrived, and that his flight from the officers was explained by his valid arrest warrants for traffic violations.    Black thus asserts that the State failed to prove that he *knowingly* possessed the heroin.

{¶ 27} Construing the evidence in the light most favorable to the State, we find sufficient evidence that Black knowingly possessed the heroin contained in the parcel delivered to him.    A defendant may be convicted based on direct evidence, circumstantial evidence, or both.    *State v. Donley*, 2017-Ohio-562, 85 N.E.3d 324, ¶ 178 (2d Dist.). Circumstantial evidence has the same probative value as direct evidence.    *Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 482, citing *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988); *State v. Bennett*, 2d Dist. Montgomery No. 24576, 2012-Ohio-194, ¶ 11.    In fact, in some cases, "circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence."    *State v. Jackson*, 57 Ohio St.3d 29, 38, 565 N.E.2d 549 (1991).

{¶ 28} The State presented evidence that Black took possession of a parcel containing heroin from Postal Inspector McDonough.    Prior to taking the parcel, Black had been informed by the postal inspector that the parcel was for Brandi Anderson, a name not associated with the residence.    Law enforcement officers further testified that, soon thereafter, Black carried the parcel as he ran from the police and that he threw the

parcel and his cell phone over a fence and into a neighbor's yard prior to his apprehension by law enforcement. Viewing this evidence in the light most favorable to the State, there was sufficient evidence for the jury to conclude that Black actually possessed the parcel of heroin and that his actions in accepting the parcel, fleeing with the parcel, and then discarding it prior to apprehension were circumstantial evidence that he knew the parcel contained heroin.

{¶ 29} In support of his argument, Black relies on *State v. Blackshear*, 8th Dist. Cuyahoga No. 95424, 2011-Ohio-1806. In *Blackshear*, police officers who were inspecting packages at a Federal Express facility located a package with indicators of its being a drug shipment: the package was heavily taped, shipped priority overnight, was from a known narcotics source city, was paid for in cash, had a handwritten label, listed phone numbers that were disconnected, and had a recipient's name that did not match the delivery address. A K-9 unit alerted on the package, and upon obtaining a search warrant, the police discovered approximately 3,370 grams of marijuana inside. The police conducted a controlled delivery of the package. Blackshear, who lived at the residence with his father, answered the door, indicated that he was waiting for a package, and signed a log sheet. According to Blackshear, he put the package on the table where mail was usually placed, believing that the package was for his father, and he went back to playing video games with a friend. Two hours later, the police executed the search warrant; they found the package unopened and Blackshear nearby playing video games. Blackshear and his father, who was asleep upstairs when the package was delivered, testified on Blackshear's behalf and denied knowledge of the parcel's contents.

{¶ 30} On review, the Eighth District found that Blackshear's conviction was based

on insufficient evidence.   The court reasoned:

> The facts in the instant case do not suggest that defendant's suspicions were aroused or that he deliberately avoided knowledge of the package's contents.   Evidence that defendant signed for the package does not prove that he knowingly committed drug possession or drug trafficking under the circumstances of this case.   Indeed, without additional evidence implicating defendant, it is just as likely that defendant's father "knowingly possessed" the package containing drugs.
>
> Defendant was accustomed to signing for packages for his father, who often received boxes in the mail.   On the day in question, defendant signed for a package without looking at the shipping label.   Defendant did not open the package, because he thought it was for his father.   Instead, he placed the box where he usually places his father's mail, and returned to playing a video game for the next two hours, until the police arrived to search his house.
>
> The state failed to establish that defendant knew, or willfully avoided knowing, that the package was addressed to someone named "Jarrett Smith" or that there was anything else suspicious about this package.   Det. Bovenzi did not testify that he said anything to defendant that would or should have aroused defendant's suspicions.
>
> Accordingly, there is insufficient evidence in the record that defendant had actual knowledge of the drugs or closed his eyes to criminal activity.   We reverse his convictions for drug possession and drug

trafficking and vacate the associated two-year prison sentence. *Blackshear* at ¶ 40-43.

{¶ 31} We find *Blackshear* to be factually distinguishable. Blackshear's behavior upon receiving the package did not support an inference that he was aware that the package contained marijuana. He had been accustomed to receiving packages for his father, he placed the package on the table where his father's mail was typically placed, and he returned to playing video games. Two hours later, when the police entered, the package remained on the table and the defendant was still playing video games.

{¶ 32} In contrast, Black accepted a package that was identified as being addressed to Brandi Anderson, a person not associated with the address. When the police approached the residence shortly after the delivery of the parcel, Black remained in possession of the parcel and he fled with it, tucking it under his arm like a football. Prior to apprehension by the police, Black threw the package and his cell phone away from himself and over the fence into an adjacent yard. Thus, unlike the defendant in *Blackshear*, Black's behavior upon receipt of the parcel and shortly thereafter could reasonably be interpreted as reflecting his knowledge of the contents of the parcel.

{¶ 33} Finally, we cannot conclude that Black's conviction for possession of heroin was against the manifest weight of the evidence. In reaching its verdict, the jury was free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented. *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28. Black's counsel elicited testimony that Black was subject to unrelated arrest warrants when the police arrived, and counsel argued that Black fled due to the warrants, not the contents of the parcel. However, it was the province of the

factfinder to weigh the evidence and determine whether the State had proven, beyond a reasonable doubt, that Black knowingly possessed the heroin. Upon review of the record, we cannot conclude that the jury "lost its way" in crediting the version of events presented by the State and in finding Black guilty of the offense.

{¶ 34} Black's second assignment of error is overruled.

### III. Sentencing/ Major Drug Offender

{¶ 35} In his first assignment of error, Black claims that the trial court erred in sentencing him as a major drug offender when that specification had been removed from the indictment, at the State's request, at trial.

{¶ 36} R.C. 2941.1410, the major drug offender specification statute, was enacted in 1996. *See* S.B. 269, 1996 Ohio Laws File 185. As originally enacted, R.C. 2941.1410(A) precluded a determination by a court that an offender was a major drug offender unless the charging document included a major drug offender specification. That provision was modified, effective March 23, 2000, to state that, "[e]xcept as provided in sections 2925.03 [trafficking in drugs] and 2925.11 [possession of drugs] of the Revised Code," the major drug offender determination was precluded absent a major drug offender specification.[1] *See* S.B. 107, 1999 Ohio Laws File 120.

{¶ 37} R.C. 2925.11(C)(6) sets forth the penalties for possession of heroin. At the time that R.C. 2941.1410 was enacted, R.C. 2925.11(C)(6)(f) provided: "If the amount of the drug involved exceeds two hundred fifty grams, possession of heroin is a felony of the

---

[1] Effective October 31, 2018, R.C. 2941.1410(A) now states: "Except as provided in sections 2925.03 and 2925.11 *and division (E)(1) of section 2925.05* [funding of drug or marijuana trafficking] of the Revised Code * * *." (Emphasis added.) *See* Am.Sub.S.B. 1, 2018 Ohio Laws File 95.

first degree, *and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code.*" (Emphasis added.) *See* S.B. 269, 1996 Ohio Laws File 185. The ability to impose an additional mandatory prison term for a major drug offender under R.C. 2925.11(C)(6)(f) was removed in 2011.[2] *See* Am.Sub. H.B. 86, 2011 Ohio Laws File 29.

{¶ 38} At the time of Black's offense in October 2015, R.C. 2925.11(C)(6)(f) read: "If the amount of the drug involved equals or exceeds two thousand five hundred unit doses or equals or exceeds two hundred fifty grams, *possession of heroin is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.*" (Emphasis added.) R.C. 2925.11(C)(6)(f).[3]

{¶ 39} Black was charged with and found guilty of violating R.C. 2925.11 in an amount greater than 250 grams. Based on the language of R.C. 2925.11(C)(6)(f), Black was a major drug offender, and the court was required to impose a mandatory 11-year prison term, i.e., a mandatory sentence of the maximum prison term allowed for a first-

---

[2] Effective October 31, 2018, R.C. 2941.1410(B) allows the imposition of an additional 3, 4, 5, 6, 7, or 8-year mandatory prison term under R.C. 2929.14(B) when there is a specification that the offender is a major drug offender and the drug involved is a fentanyl-related compound. *See* Am.Sub.S.B. 1, 2018 Ohio Laws File 95.

[3] As of 2016, R.C. 2925.11(C)(6)(f) now reads: "If the amount of the drug involved equals or exceeds *one thousand* unit doses or equals or exceeds *one hundred* grams, possession of heroin is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree." (Emphasis added.) *See* H.B. 171, 2016 Ohio Laws File 97.

degree felony.   Under R.C. 2941.1410(A), Black's indictment was not required to include a major drug offender specification for the court to impose that penalty on Black.

**{¶ 40}** Black's first assignment of error is overruled.

### IV. Conclusion

**{¶ 41}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .


DONOVAN, J. and TUCKER, J., concur.


Copies sent to:

Mathias H. Heck
Michael P. Allen
Jay A. Adams
Hon. Timothy N. O'Connell