[Cite as *State v. Hudson*, 2025-Ohio-4969.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-11 |
| Appellee | : | |
| | : | Trial Court Case No. CRB2400809 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| DAIVONTAY J. HUDSON | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 31, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

_____
CHRISTOPHER B. EPLEY, PRESIDING JUDGE

TUCKER, J., and HANSEMAN, J., concur.

**OPINION**

TRAVIS L. KANE, Attorney for Appellant
MATTHEW J. BARBATO, Attorney for Appellee

EPLEY, P.J.

{¶ 1} Daivontay J. Hudson was convicted after a jury trial in the Fairborn Municipal Court of violating a protection order, a first-degree misdemeanor, and obstructing official business, a second-degree misdemeanor. He claims that his conviction for violating a protection order was based on insufficient evidence. For the following reasons, the trial court's judgment is affirmed

### I. Facts and Procedural History

{¶ 2} Hudson and H.C. began an on-and-off romantic relationship in July 2022. The relationship was marked by violence, and on March 4, 2024, Hudson was charged with domestic violence and other offenses in *State v. Hudson*, Fairborn M.C. No. CRB2400218. The same day, H.C. obtained a domestic violence temporary protection order against Hudson, and he was served the order at the jail. Hudson was released on bond while that case was pending.

{¶ 3} Approximately four months later, on the morning of July 17, 2024, H.C. went to the Fairborn police station and asked to speak with an officer about an incident. Officer Jon Matheny responded to the police station to meet with H.C. During their conversation, H.C. gave Officer Matheny the key to her apartment.

{¶ 4} After speaking with H.C., Matheny reviewed the protection order, which the dispatcher had provided to him, to confirm that it was in effect. The officer noted that Hudson

was not permitted to be at H.C.'s residence, to initiate contact with her, or to be within 500 feet of her. H.C. could not change the terms of the protection order.

{¶ 5} Officer Matheny consulted with his supervisor about the situation, and then he and Sergeant Ferree drove to H.C.'s two-bedroom apartment on Triumph Drive. Another officer also responded to the address and positioned himself outside, near the parking lot. Matheny and Ferree climbed the stairs to the second floor, where H.C.'s apartment was located, and both officers repeatedly knocked on the door. Matheny identified himself as a police officer and asked Hudson to respond. No one replied, and they heard nothing to indicate that anyone was inside.

{¶ 6} After three or four minutes, Officer Matheny attempted to enter the apartment using the key H.C. had provided. The key unlocked the door, but a chain prevented the door from fully opening. Matheny discussed the situation with Ferree, and Ferree cut the chain. Immediately after he did so, the door slammed shut. Believing that Hudson was responsible for closing the door, Matheny called out that they were not leaving and that he was under arrest for obstructing official business. Hudson did not respond.

{¶ 7} Officer Matheny summoned additional officers and a medic to the area, and a standoff ensued. At one point, Hudson was seen looking out a window, and officers again attempted to enter through the door. However, they encountered resistance and saw that a couch had been placed in front of the door. Hudson pushed the couch, closing the door. Ultimately, Captain James Hern climbed a ladder provided by the Fairborn Fire Department and entered the apartment through an open window. Hern ordered Hudson to get away from the door and get on the ground. When Hudson failed to comply with either command, Hern moved Hudson away from the door, allowing other officers to enter and take Hudson into

3

custody. After Hudson's arrest, two children, aged eight and ten years old, were found in the apartment.

{¶ 8} Officer Matheny transported Hudson to the Greene County Jail and interviewed him. Hudson told the officer that H.C. had called him, that he went over to watch the children, and that she "obviously had turned on him and responded to the police department."

{¶ 9} The next day, Hudson was charged by complaint with two counts of endangering children, two counts of unlawful restraint, and one count each of violating a protection order, domestic violence, and obstructing official business. The State later dismissed all but two charges: violating a protection order (Count A) and obstructing official business (Count E).

{¶ 10} The matter proceeded to a jury trial on February 19, 2025. The State presented three witnesses: Officer Matheny, Captain Hern, and Melissa Litteral, the clerk of court and court administrator of the Fairborn Municipal Court. The State also offered five exhibits, including a copy of the protection order. Hudson presented no evidence in his defense. After deliberating, the jury found Hudson guilty of both offenses.

{¶ 11} The court proceeded immediately to sentencing. It imposed 180 days in jail with 130 days suspended and 5 days of jail-time credit for violating the protection order. For obstructing official business, it sentenced Hudson to 90 days in jail with 40 days suspended and 5 days of jail-time credit, to be served consecutively to the jail term for violating the protection order. Hudson's aggregate jail term was 90 days. The court issued a no-contact order, prohibiting Hudson from having any contact with H.C. or her family for two years. In both cases, the court required Hudson to pay a $150 fine plus court costs and placed him on supervised community control for up to two years.

{¶ 12} Hudson appeals from his convictions, raising one assignment of error.

4

## II. Sufficiency of the Evidence

{¶ 13} In his sole assignment of error, Hudson claims that his conviction for violating a protection order was based on insufficient evidence. He does not challenge his conviction for obstructing official business. Inexplicably, both Hudson and the State indicate in their appellate briefs that Hudson was acquitted of obstructing official business.

{¶ 14} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id*.

{¶ 15} Hudson concedes, as he did at trial, that he was served with the protection order issued on March 4, 2024. He contends, however, that the State failed to prove that his presence at the Triumph Drive apartment violated the order. He emphasizes that the protection order did not identify H.C.'s address, there was no testimony that H.C. lived at the apartment, and there was no evidence that Hudson was within 500 feet of H.C. when he was arrested. Hudson further asserts that the State presented no evidence that he contacted H.C. or was near H.C.'s children in violation of the protection order.

{¶ 16} H.C. did not testify at trial, and there was no direct evidence that H.C. resided at the Triumph Drive apartment. Officer Matheny testified that H.C.'s address was not listed on the protection order and that he did not check with the apartment leasing office to see who was listed on the Triumph Drive apartment. However, circumstantial evidence has the

same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147 (1988); *State v. St. John*, 2019-Ohio-650, ¶ 49 (2d Dist.). In some cases, "circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence." *State v. Jackson*, 57 Ohio St.3d 29, 38 (1991).

{¶ 17} In this case, H.C. sought out the police about a concern, and her conversation with Officer Matheny prompted him to review the protection order that H.C. had received against Hudson. Matheny testified that H.C. gave him a "key to her residence," and after discussing the matter with his supervisor, he headed to the Triumph Drive apartment. The key that H.C. had provided unlocked the apartment's door. On cross-examination, Matheny stated that it was "incorrect" that he had not "verified the address of the alleged victim in this matter" or "verified with the apartment complex who lives in that unit." Construing the evidence in the light most favorable the State, the jury could have reasonably concluded that H.C. resided at the Triumph Drive apartment.

{¶ 18} Because the protection order prohibited Hudson from entering H.C.'s residence, the State presented sufficient evidence that Hudson violated the protection order by being at the Triumph Drive apartment. Given this conclusion, we need not address whether the State presented sufficient evidence that he violated the protection order through improper contact with H.C. or proximity to her children.

{¶ 19} Hudson's assignment of error is overruled.

### III. Conclusion

{¶ 20} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.

6